**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TASTY CHICK'N, LLC, *et al.*,[1] | § | Case No. 26-90831 (CML) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

**DEBTORS' MOTION FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING AND**
**APPROVING PROCEDURES TO REJECT OR ASSUME**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) ABANDON**
**CERTAIN PERSONAL PROPERTY, AND (III) GRANTING RELATED RELIEF**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):[2]

## Relief Requested

1. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing and approving procedures (as described herein, the "Assumption and Rejection Procedures") for rejecting, assuming, or assuming and assigning

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/TastyChickn. The Debtors' address for service in these chapter 11 cases is Tasty Restaurant Group, 6201 W Plano Parkway, Suite 200, Plano, TX 75093.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them elsewhere in this Motion or in the First Day Declaration, as applicable.

executory contracts and unexpired leases (including any amendments or modifications thereto, each an "Agreement" and collectively, the "Agreements") and (b) granting related relief. The Debtors also request authority, but not direction, to remove or abandon personal property of the Debtors, including, without limitation, equipment, fixtures, furniture, and other personal property that may be located on, or have been installed in, leased premises that are subject to a rejected Agreement after the effective date of any proposed rejection.

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362, 363, 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6006, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 9013-1 of the Local Rules for the Southern District of Texas (the "Local Rules"), and Section G of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

## Background

5. As of the Petition Date, the Debtors own and/or operate 75 KFC and 9 KFC/Taco Bell co-branded restaurants across 10 states.[3] Located primarily in the Southeast and Midwest United States, the Debtors operate their restaurants pursuant to franchise agreements with KFC and Taco Bell under the Yum! brands umbrella. Non-Debtor Tasty Restaurant Group, LLC, a

[3] In connection with other first day relief, the Debtors are seeking to reject several leases related to restaurants that are no longer operating.

multi-brand quick-service restaurant operator, provides back-office and management services to the Debtors.

6. On November 16, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committee has been appointed.

7. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Thomas M. Scott, President and CEO, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

**The Debtors' Executory Contracts and Unexpired Leases**

8. The Debtors are parties to hundreds of Agreements, which include, among other agreements, contracts with vendors for the supply of goods and services, contracts related to the operation of the Debtors' businesses, and leases with respect to real and personal property. Many of these Agreements may be considered leases of non-residential real property subject to section 365(d)(4) of the Bankruptcy Code. During these chapter 11 cases, the Debtors may, on a consensual or non-consensual basis, seek to assume, assume and assign, or reject the Agreements.

9. As described in the First Day Declaration, the Debtors, with the assistance of their advisors, are in the process of evaluating all of their Agreements to determine whether such Agreements should be (a) rejected, as they are unfavorable to the Debtors or no longer beneficial

for business operations, or (b) assumed or assumed and assigned, as they are favorable or otherwise valuable to the Debtors' estates (including those Agreements that the Debtors may assume as amended following consensual negotiations with the applicable counterparties).

10. Absent the relief requested in this Motion, the Debtors would be required to file separate motions to reject or assume Agreements, resulting in substantial costs to, and administrative burdens on, the Debtors' estates—not to mention the attendant burden on the Court's docket. Accordingly, the Debtors hereby request approval of the Assumption and Rejection Procedures to minimize such costs and burdens.

**The Proposed Rejection Procedures**

11. The Debtors seek entry of the Order authorizing and approving the following procedures with respect to rejection of the Agreements (the "Rejection Procedures"):

a. ***Rejection Notice***. The Debtors shall file a notice substantially in the form attached to the Order as Exhibit 1 (the "Rejection Notice") indicating the Debtors' intent to reject an Agreement or Agreements pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things: (i) the Agreement or Agreements to be rejected; (ii) the Debtor or Debtors party to such Agreements; (iii) the names and addresses of the counterparties to such Agreement(s) (each, a "Rejection Counterparty"); (iv) the proposed effective date of rejection for each such Agreement (each, the "Rejection Date"); (v) if any such Agreement is an unexpired lease of non-residential real property, a description of any of the Debtors' property to be abandoned at the leased premises, including any personal property, furniture, fixtures, and equipment (the "Abandoned Property"), if any, and an estimate of the book value of such property, if practicable; (vi) with respect to leased real property, any known third party having an interest in any Abandoned Property located at the leased premises; and (vii) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below). The Rejection Notice may list multiple Agreements; *provided* that the number of Agreements listed on each Rejection Notice shall be limited to no more than one hundred. Further, the Rejection Notice shall include the proposed form of order (the "Rejection Order") approving the rejection of Agreements, which shall be substantially in the form of Schedule 3 to the Rejection Notice. No Agreement shall be deemed rejected absent entry of an applicable Rejection Order.

b. ***Service of the Rejection Notice***. The Debtors will cause each Rejection Notice to be served: (i) by overnight delivery service upon the Rejection Counterparties affected by the Rejection Notice at the notice address provided in the applicable Agreement (and upon such Rejection Counterparty's counsel, if known) and all parties who may have any interest in any Abandoned Property (if known); and (ii) by first-class mail, email, or fax, upon (A) the Office of the U.S. Trustee for the Southern District of Texas (the "U.S. Trustee"), Attn: Jana Whitworth (Jana.Whitworth@usdoj.gov) and Ross Travis (C.Ross.Travis@usdoj.gov); (B) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (C) the office of the attorney general for each of the states in which the Debtors operate; (D) the United States Attorney's Office for the Southern District of Texas; (E) the Internal Revenue Service; (F) counsel to MidCap Financial Investment Corp.; (G) counsel to KFC US, LLC and Taco Bell Franchisor, LLC; and (H) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Master Notice Parties").

c. ***Objection Procedures***. Parties objecting to a proposed rejection must file and serve a written objection[4] so that such objection is filed with this Court on the docket of the Debtors' chapter 11 cases no later than fourteen days after the date the Debtors file and serve the relevant Rejection Notice (the "Rejection Objection Deadline") and promptly serve such objection on the following parties (collectively, the "Objection Service Parties"): (i) the Debtors, Tasty Restaurant Group, 6201 W. Plano Parkway, Suite 200, Plano, Texas 75093; (ii) proposed counsel to the Debtors, Gray Reed, 1300 Post Oak Blvd., Suite 2000, Houston, Texas 77056, Attn: Jason S. Brookner (jbrookner@grayreed.com), Lydia R. Webb (lwebb@grayreed.com), Emily F. Shanks (eshanks@grayreed.com), and Parker G. Embry (pembry@grayreed.com); (iii) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jana Whitworth (Jana.Whitworth@usdoj.gov) and Ross Travis (C.Ross.Travis@usdoj.gov); (iv) counsel to MidCap Financial Investment Corp., Kane Russell Coleman Logan, 401 Congress Avenue, Suite 2100, Austin, Texas 78701, Attn: Mark Taylor (mtaylor@krcl.com) and Morris Weiss (mweiss@krcl.com); (v) counsel to KFC US, LLC and Taco Bell Franchisor, LLC, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, Texas 75201, Attn: Sarah Schultz (sschultz@akingump.com); and (vi) any statutory committee appointed in these chapter 11 cases.

d. ***No Objection Timely Filed***. If no objection to the rejection of any Agreement is timely filed, then the Debtors shall submit a proposed Rejection Order approving the rejection of each Agreement listed in the applicable Rejection Notice, for entry by the Court under a certificate of no

[4] An objection to the rejection of any particular Agreement listed on a Rejection Notice shall not constitute an objection to the rejection of any other Agreement listed on such Rejection Notice.

objection and, if the Rejection Order is entered, each such Agreement shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the applicable Rejection Counterparty agree; *provided*, *however*, that the Rejection Date for a lease of non-residential real property shall not occur until the later of (i) the Rejection Date set forth in the Rejection Notice and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing, with email being sufficient, of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises; *provided*, *further*, that the Rejection Date for a lease of non-residential real property rejected pursuant to these Rejection Procedures shall not occur earlier than the date the Debtors filed and served the applicable Rejection Notice.

e. ***Unresolved Timely Objections***. If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall request a hearing on such objection and shall provide at least seven days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties. If such objection is overruled or withdrawn, such Agreement(s) shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty agree, or as ordered by the Court.

f. ***Removal from Schedule***. The Debtors reserve the right to remove any Agreement from the schedule to a Rejection Notice at any time prior to entry of a Rejection Order.

g. ***No Application of Security Deposits***. If the Debtors have deposited monies with a Rejection Counterparty as a security deposit or other arrangement, such Rejection Counterparty may not set off or recoup or otherwise use such deposit without the prior approval of the Court, unless the Debtors and the applicable Rejection Counterparty otherwise agree.

h. ***Abandoned Property***. The Debtors are authorized, but not directed, at any time on or before the applicable Rejection Date, to remove or abandon any of the Debtors' personal property that may be located on the Debtors' leased premises that are subject to a rejected Agreement. The Debtors shall generally describe the Abandoned Property in the Rejection Notice and their intent to abandon such property. Absent a timely objection, any and all Abandoned Property located on the Debtors' leased premises on the Rejection Date of the applicable lease of nonresidential real property shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date. After the Abandoned Property is deemed abandoned pursuant to section 554 of the Bankruptcy Code, the

applicable Rejection Counterparty or counterparties may, in their sole discretion and without further notice or order of this Court, utilize and/or dispose of such property without liability to the Debtors or consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition. Notwithstanding anything to the contrary herein, prior to the applicable Rejection Date for any Lease, the Debtors shall provide MidCap Financial Trust Corp. ("MidCap") access to the leased premises, and shall make reasonable efforts to coordinate with landlords for removal of MidCap's collateral.

i. ***Proofs of Claim***. Claims arising out of the rejection of Agreements, if any, must be filed on or before the later of (i) the deadline for filing proofs of claim established in these chapter 11 cases and (ii) thirty days after the later of (A) the Rejection Date and (B) the date of entry of an order rejecting the Agreement. If no proof of claim is timely filed by the Rejection Bar Date (as defined in the Rejection Notice), such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on account of such claim that may be made in connection with these chapter 11 cases.

## The Proposed Assumption Procedures

12. The Debtors seek entry of the Order authorizing and approving the following assumption procedures with respect to the Agreements (the "Assumption Procedures," and together with the Rejection Procedures, the "Assumption and Rejection Procedures"):

a. ***Assumption Notice***. The Debtors shall file a notice substantially in the form attached to the Order as Exhibit 2 (the "Assumption Notice") indicating the Debtors' intent to assume an Agreement or Agreements pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things: (i) the Agreement or Agreements to be assumed; (ii) the Debtor or Debtors party to such Agreements; (iii) the names and addresses of the counterparties to such Agreements (each, an "Assumption Counterparty"); (iv) the identity of the proposed assignee of such Agreements (the "Assignee"), if applicable; (v) the effective date of the assumption for each such Agreement (the "Assumption Date"); (vi) the proposed cure amount, if any, for each such Agreement; (vii) a description of any material amendments to the Agreement made outside of the ordinary course of business; and (viii) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below). Further, the Assumption Notice shall include the proposed form of order (the "Assumption Order") approving the assumption or assumption and assignment of the Agreements, which shall be substantially in the form of Schedule 3 to the Assumption Notice. No Agreement shall be deemed assumed absent entry of an applicable Assumption Order.

b. ***Service of the Assumption Notice and Evidence of Adequate Assurance***. The Debtors will cause the Assumption Notice to be served (i) by overnight delivery service upon the Assumption Counterparties affected by the Assumption Notice and each Assignee, if applicable, at the address set forth in the notice provision of the applicable Agreement (and upon the Assumption Counterparties' counsel, if known) and (ii) by first-class mail, email, or fax upon the Master Notice Parties. To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice at the address set forth in the notice provision of the applicable Agreement (and upon the Assumption Counterparties' counsel, if known, by electronic mail).[5]

c. ***Objection Procedures***. Parties objecting to a proposed assumption or assumption and assignment (including as to the cure amount), as applicable, of an Agreement must file and serve a written objection[6] so that such objection is filed with this Court and actually received by the Objection Service Parties no later than fourteen days after the date the Debtors file and serve the relevant Assumption Notice and promptly serve such objection on the Objection Service Parties.

d. ***No Objection Timely Filed***. If no objection to the assumption of any Agreement is timely filed, the Debtors shall submit a proposed Assumption Order approving the assumption of each Agreement listed in the applicable Assumption Notice, for entry by the Court under a certificate of no objection, and, if the Assumption Order is entered, each such Agreement shall be assumed as of the Assumption Date set forth in the applicable Assumption Notice or such other date as the Debtors and the applicable Assumption Counterparty agree, and the proposed cure amount shall be binding on all counterparties to such Agreement and no amount in excess thereof shall be paid for cure purposes; *provided*, *however*, that the Assumption Date for a lease of nonresidential real property shall not occur earlier than the date the Debtors filed and served the applicable Assumption Notice.

e. ***Unresolved Timely Objections***. If an objection to an Assumption Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall request a hearing on such objection and shall

---

[5] The Debtors shall serve (by electronic mail, if requested) a counterparty to an Agreement other than a lease of non-residential real property to be assumed under the Assumption and Rejection Procedures with evidence of adequate assurance as soon as reasonably practicable upon such counterparty's written request to the Debtors' proposed counsel.

[6] An objection to the assumption of any particular Agreement listed on an Assumption Notice shall not constitute an objection to the assumption of any other Agreement listed on such Assumption Notice.

provide at least seven days' notice of such hearing to the applicable Assumption Counterparty and the other Objection Service Parties. If such objection is overruled or withdrawn, such Agreement shall be assumed as of the Assumption Date set forth in the Assumption Notice or such other date to which the Debtors and the counterparty to such Agreement have agreed, or as ordered by the Court.

f. ***Removal from Schedule***. The Debtors reserve the right to remove any Agreement from the schedule to an Assumption Notice at any time prior to the Assumption Date (including, without limitation, upon the failure of any proposed assumption and assignment to close).

13. In addition, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors request that the assignment of any Agreement pursuant to the Assumption Procedures (a) be free and clear of (i) all liens (and any liens shall attach to the proceeds in the same order and priority subject to all existing defenses, claims, setoffs, and rights) and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Agreement(s) (but only in connection with the assignment by the Debtor to the Assignee)); *provided*, *however*, that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a lease of non-residential real property including adjustments, reconciliations, and indemnity obligations, liability for which shall be assumed by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the applicable Assignee; and (b) constitute a legal, valid, and effective transfer of such Agreement(s) and vest the applicable Assignee with all rights, title, and interests in the applicable

Agreements.[7] For the avoidance of doubt, all provisions of the applicable assigned Agreement, including any provision limiting assignment, shall be binding on the applicable Assignee.

## Basis for Relief Requested

### I. The Assumption and Rejection Procedures Are in the Best Interests of the Debtors' Estates.

14. Given the large number of Agreements to which the Debtors are a party, establishing the Assumption and Rejection Procedures will streamline the administration of these chapter 11 cases and enhance the efficiency of the chapter 11 process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Agreement that the Debtors seek to assume or reject. The Assumption and Rejection Procedures are reasonable and fair to Agreement counterparties because they afford parties in interest the opportunity to be heard with respect to the rejection, assumption, or assumption and assignment of the Agreements (and any amendments to Agreements or abandonment of property related thereto).

### II. Rejection, Assumption, Assignment, and Amendment of the Agreements Are an Exercise of the Debtors' Business Judgment.

15. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See, e.g.*, *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *In re TransAmerican Nat. Gas Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987) (holding that the

---

[7] Certain of the Agreements may contain provisions that restrict, prohibit, condition, or limit the assumption and/or assignment of such Agreement. The Debtors reserve all rights with respect to the enforceability of such provisions.

rejection power of section 365(a) is meant to relieve "the debtor of burdensome contracts in the exercise of its business judgment"); *In re Senior Care Ctrs., LLC*, 607 B.R. 580, 587 (Bankr. N.D. Tex. 2019) ("A court evaluates whether a lease should be assumed or rejected employing the business judgment standard."). The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

16. The Court may also authorize the Assumption and Rejection Procedures under section 105(a) of the Bankruptcy Code. Section 105(a) codifies a bankruptcy court's inherent equitable powers and allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, a bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code is appropriately used to carry out one of the central policies underlying chapter 11—*i.e.*, to preserve value and maximize property available to satisfy the debtor's stakeholders.

17. Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. Further, the business judgment standard is satisfied when a debtor determines that assumption or rejection will benefit the estate. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (holding that court approval of a debtor's decision to assume a lease should only be withheld if the debtor's judgment is clearly erroneous or speculative); *see also In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426 (Bankr. N.D. Tex. 2009) ("The court must ensure the decision-making process used by a debtor in possession in exercising its powers under the [Bankruptcy] Code is a sensible one.").

18. Further, as with the assumption or rejection of an executory contract or an unexpired lease under section 365 of the Bankruptcy Code, any amendment to an executory contract or unexpired lease that may be deemed outside the ordinary course of business is authorized under section 363 of the Bankruptcy Code when there is a "sound business purpose" that justifies such action. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (adopting the "sound business judgment" test of *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983), and requiring "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); *see also In re 9 Houston LLC*, 578 B.R. 600, 610 (Bankr. S.D. Tex. 2017) (holding that, once a debtor has made a decision, it is protected by the business judgment rule).

19. The Debtors have determined, in their sound business judgment, that the rejection, assumption, or assumption and assignment (and any amendments thereto) of Agreements, as applicable, in accordance with the Assumption and Rejection Procedures proposed herein is and will be in the best interests of the Debtors' estates. Further, the Assumption and Rejection Procedures will avoid substantial legal expense and the use of Court time that would result if a separate motion were filed and a hearing were held for each request seeking the rejection, assumption, or assumption and assignment of Agreements. The Debtors submit that the information provided on the Rejection Notices and Assumption Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such a rejection, assumption, or assumption and assignment (and any amendments thereto) in their sound business judgment. Accordingly, the Court should approve the Assumption and Rejection Procedures.

## III. The Assignment of Agreements Should Be Approved Free and Clear of Interests.

20. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if: (a) applicable nonbankruptcy law permits a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

21. Furthermore, as already set forth, section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a trustee's decision to assume or reject executory contracts or unexpired leases of nonresidential real property is whether the trustee's reasonable business judgment supports assumption or rejection. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *see also Tex. Health Enters. Inc. v. Lytle Nursing Home (In re Tex. Health Enters. Inc.)*, 72 F. App'x 122, 127 (5th Cir. 2003) ("[T]he bankruptcy code makes it clear that it is the choice of the debtor-in-possession, and not the bankruptcy court, to assume or reject an executory contract"); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr D. Del. 2006).

22. Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract

> or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

23. Section 365(f)(2) also provide that:

> [t]he trustee may assign an executory contract or unexpired lease of the debtors only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

24. Executory contracts and unexpired leases are property of a debtor's estate. To the extent the Debtors assume and assign an Agreement pursuant to the Assumption Procedures, they do so in their own sound business judgment and in the best interest of the Debtors' estate and their creditors, and such assignment is tantamount to a sale of estate property and may be transferred free and clear of the interests in such property held by an entity other than the estate, so long as one of the criteria under section 363(f) of the Bankruptcy Code is satisfied. The Debtors propose that if a party in interest fails to timely object to an assumption and assignment consistent with the Assumption Procedures, such party shall be deemed to "consent" to such assumption and assignment within the meaning of section 363(f)(2) of the Bankruptcy Code. If a party in interest timely objects to an assumption and assignment consistent with the Assumption Procedures, and such objection is not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the objection; if such objection is overruled or withdrawn, the Agreement(s) in question shall be assumed and assigned. The requirements of section 363(f) of the Bankruptcy Code would thus be

satisfied for any proposed "transfer" of an Agreement free and clear of liens, claims, encumbrances, and other interests. Moreover, as discussed in Section V below, the Assumption and Rejection Procedures contemplate that the Debtors will provide counterparties with information such as the term for curing any defaults, the identity of any assignee, and the terms for providing adequate assurances of future performance under the assigned contracts. Under the circumstances, the Assumption and Rejection Procedures supply sufficient information to demonstrate the Debtors' sound business justification for the assumption and assignment of any Contracts, pursuant to section 365(b) and (f) of the Bankruptcy Code.

## IV. Abandonment by the Debtors of Personal Property Is Proper Under Section 554(a).

25. With respect to the Debtors' request for authority to abandon property, the Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied. Section 554(a) provides that a debtor in possession may abandon, after notice and a hearing, "any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Before authorizing abandonment of property, a bankruptcy court must find that either: (a) the property is burdensome to the estate or (b) the property is both of inconsequential value and inconsequential benefit to the estate. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986); *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 3157567, at *2 (Bankr. S.D. Tex. June 19, 2013); *In re Am. Coastal Energy Inc.*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009).

26. The personal property proposed to be abandoned in connection with any future rejections of Agreements that are real property leases would primarily consist of fixtures, furniture, and other equipment that is (a) of minimal or no material value or benefit to the Debtors' estates and/or (b) burdensome insofar as the costs and expenses of removal and storage of such property

are likely to exceed the net proceeds realizable from its sale or their value to the Debtors in any other context.

**V. The Assumption and Rejection Procedures Satisfy Due Process.**

27. The counterparties to the Agreements will not be prejudiced by the Assumption and Rejection Procedures because, upon receipt of an Assumption Notice or a Rejection Notice, such counterparties will have received advance notice of the Debtors' intent to reject, assume, or assume and assign their respective Agreements as of the effective date of such assumption or rejection. *See, e.g.*, *In re Nat'l Gypsum Co*., 208 F.3d 498, 512 (5th Cir. 2000) (finding that the requirements of the Bankruptcy Code "provide necessary safeguards to parties forced to maintain contractual relationships with a reorganizing debtor"); *In re Thane Int'l, Inc.*, 586 B.R. 540, 548 (Bankr. D. Del. 2018) (finding that the requirements of the Bankruptcy Code are meant to protect the interests of the non-debtor parties to executory contracts, so they may avoid having to deal with an assumption of which they had no notice and which they had no opportunity to contest); *In re Mid Region Petrol. Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject), *aff'd*, 1 F.3d 1130 (10th Cir. 1993); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding debtor may reject executory contract by clearly communicating intention to reject).

28. Additionally, in the case of unexpired leases of nonresidential real property, the Debtors may vacate the premises before or upon serving the Rejection Notice, thereby allowing the counterparties to take possession of and relet the property promptly. *See, e.g.*, *Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 608-09 (2d Cir. 2007) (holding that the bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re Cafeteria Operators, L.P.*, 299

B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject [the contracts]"); *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (granting retroactive relief based on the circumstances of the case); *In re Amber's Stores*, *Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that lease at issue should be deemed rejected as of the petition date due to equities of the case where debtor turned over keys, vacated premises, and served motion to reject lease as soon as possible).

29. Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(f). *See* Fed. R. Bankr. P. 6006(e). Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple executory contracts or unexpired leases must satisfy. These requirements are procedural in nature. A motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

i. state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

ii. list parties alphabetically and identify the corresponding contract or lease;

iii. specify the terms, including the curing of defaults, for each requested assumption or assignment;

iv. specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

v. be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

vi. be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

30. The clear purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to the Agreements while conserving estate resources. Counterparties must be able to locate their Agreements and readily determine whether their Agreements are being assumed or rejected.

31. The Assumption and Rejection Procedures satisfy Bankruptcy Rule 6006(f), including the one-hundred-contract-or-lease limit set forth in subsection (vi) thereof. Further, given the number of Agreements the Debtors may be seeking to assume or reject, obtaining Court approval of each assumption or rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in costs to the Debtors' estates that may decrease the economic benefits of rejection or assumption.

32. In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the U.S. Trustee and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

33. As a result, the Assumption and Rejection Procedures afford counterparties and all other parties in interest their due process rights by providing notice and the opportunity to be heard. Moreover, Court oversight is maintained in the event of an objection. For the foregoing reasons, the Assumption and Rejection Procedures should be approved, and the Debtors should be authorized to reject, assume, and assume and assign the Agreements consistent with the terms of such procedures.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

34. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Reservation of Rights**

35. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code except as requested herein; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the requested relief, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

36. The Debtors will provide notice of this Motion to the following parties or their counsel: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to MidCap Financial

Investment Corp.; (d) counsel to KFC US, LLC and Taco Bell Franchisor, LLC; (e) the counterparties to the Debtors' Agreements; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 16th day of November, 2026.

**GRAY REED**

By: */s/ Jason S. Brookner*
Jason S. Brookner
TX Bar No. 24033684
Lydia R. Webb
TX Bar No. 24083758
Emily F. Shanks
TX Bar No. 24110350
Parker G. Embry
TX Bar No. 24126826
1300 Post Oak Blvd., Suite 2000
Houston, TX 77056
Telephone: (713) 986-7000
Email: jbrookner@grayreed.com
lwebb@grayreed.com
eshanks@grayreed.com
pembry@grayreed.com

- and -

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
Ron Bender (*pro hac vice* pending)
2818 La Cienega Ave.
Los Angeles, CA 90034
Telephone: (310) 229-1234
Email: rb@lnbyg.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on November 16, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner